



1  STEVEN G. COHEN, Bar No. 111291
   steven.cohen@dlapiper.com
2  **DLA PIPER US LLP**
   2000 University Avenue
3  East Palo Alto, CA  94303-2215
   Tel:  650.833.2000
4  Fax:  650.833.2001

5  Attorneys for Plaintiff
   HAIR CLUB FOR MEN, LLC

6

7

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11
   HAIR CLUB FOR MEN, LLC, a Delaware          C 06   07842 PVT  JF
12 limited liability company,                  CASE NO.

13            Plaintiff,                        **COMPLAINT FOR BREACH OF
                                                CONTRACT; MISAPPROPRIATION OF
14       v.                                     TRADE SECRETS; UNFAIR BUSINESS
                                                PRACTICES; AND INJUNCTIVE RELIEF**
15 RCDC CORPORATION, a California
   corporation, dba IMAGE                       **DEMAND FOR JURY TRIAL**
16 ENHANCEMENT GROUP and dba
   INTERNATIONAL IMAGE                          **CERTIFICATION OF INTERESTED
17 ENHANCEMENT ASSOCIATES and dba               ENTITIES OR PARTIES**
   THE IMAGE ASSOCIATES; ROBERT
18 CLARK, an individual; and SILVIA A.
   HERRERA, an individual,
19
            Defendants.
20

21

22       Plaintiff HAIR CLUB FOR MEN, LLC, a Delaware limited liability company ("Hair

23 Club"), for its Complaint for Breach of Contract, Misappropriation of Trade Secrets, Unfair

24 Business Practices and Injunctive Relief against Defendants RCDC CORPORATION, a

25 California corporation dba IMAGE ENHANCEMENT GROUP and dba INTERNATIONAL

26 IMAGE ENHANCEMENT ASSOCIATES and dba THE IMAGE ASSOCIATES, Defendant

27 ROBERT CLARK, an individual, and Defendant SILVIA A. HERRERA, an individual

28 (collectively, "Defendants") alleges as follows:

-1-

DLA PIPER US LLP
East Palo Alto

PA\10483107.2          COMPLAINT FOR BREACH OF CONTRACT; MISAPPROPRIATION OF TRADE
                       SECRETS; UNFAIR BUSINESS PRACTICES; AND INJUNCTIVE RELIEF

## THE PARTIES

1.     At all times mentioned herein, Plaintiff Hair Club was and is a corporation organized and existing under the laws of the State of Delaware, is qualified to do business in the State of California, and is doing business in California.  Prior to approximately October 1, 2006, Hair Club had a facility located at 51 Metro Plaza, San Jose, California (the "old Hair Club facility").  Since approximately October 1, 2006, Hair Club has had a facility located at 2540 N. 1st St., #220, San Jose, California (the "new Hair Club facility").  Hair Club's principal place of business is in the State of Florida.

2.     Hair Club is informed and believes, and thereon alleges, that RCDC CORPORATION ("RCDC"), was and is a corporation organized and existing under the laws of the State of California, conducting business in Santa Clara County, California.  Hair Club is further informed and believes, and thereon alleges, that RCDC does business under the fictitious name of Image Enhancement Group and under the fictitious name of International Image Enhancement Associates and under the fictitious name of The Image Associates.  Hair Club is informed and believes, and thereon alleges, that on or about February 15, 2005, RCDC filed a fictitious business name statement to use the name Image Enhancement Group (certificate number 457324), but there is no record of a fictitious business name certification under the name International Image Enhancement Associates or the name The Image Associates, although Hair Club is informed and believes, and thereon alleges, that RCDC has been operating and conducting business under one or more of these fictitious names in Santa Clara County, California, between June 2005 and the present.

3.     Hair Club is informed and believes, and thereon alleges, that at all times mentioned herein, ROBERT CLARK ("Clark") was and is an individual residing and domiciled in Santa Clara County, California, and was and is the President and principal owner of RCDC.

4.     Hair Club is informed and believes, and thereon alleges, that at all times mentioned herein, SILVIA A. HERRERA ("Herrera") was and is an individual residing and domiciled in Santa Clara County, California.

/ / /

DLA PIPER US LLP
EAST PALO ALTO

PA\10483107.2                 COMPLAINT FOR BREACH OF CONTRACT; MISAPPROPRIATION OF TRADE
SECRETS; UNFAIR BUSINESS PRACTICES; AND INJUNCTIVE RELIEF

**JURISDICTION**

5.     Jurisdiction is founded upon diversity of citizenship, 28 U.S.C. §1332, the Plaintiff and the Defendants being citizens of different states and the matter in controversy in excess of $75,000, exclusive of interests and costs.

**VENUE**

6.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the acts or omissions giving rise to the controversy alleged in this Complaint occurred in the County of Santa Clara, California.

**INTRA-DISTRICT ASSIGNMENT**

7.     Intra-district assignment to the San Jose Division of the United States District Court for the Northern District of California is appropriate under Civil Local Rule 3-2(e), as the events that give rise to the claims alleged herein occurred in the County of Santa Clara, California.

**GENERAL ALLEGATIONS**

The Parties' Business

8.     Hair Club is in the business of, *inter alia*, selling, distributing, marketing and promoting products and services related to medical and non-medical hair replacement and hair restoration for men, women and children at various locations throughout the Unites States and Canada.  As set forth hereinafter, Hair Club uses confidential and proprietary information and trade secrets in its business, including customer lists (and customer names and contact information) and specific information relating to each of its customers' unique hair restoration requirements, to efficiently and profitably run its business.

9.     Until June 28, 2005, RCDC operated a retail non-surgical hair restoration and replacement business, as well as a surgical hair restoration and skin treatment business.  Hair Club is informed and believes, and thereon alleges, that after June 28, 2005, RCDC ceased operating its non-surgical hair restoration business but continued to operate its surgical hair restoration and skin treatment business.

10.     Hair Club is informed and believes, and thereon alleges, that both prior to and

-3-

DLA PIPER US LLP
EAST PALO ALTO

PA\10483107.2          COMPLAINT FOR BREACH OF CONTRACT; MISAPPROPRIATION OF TRADE SECRETS; UNFAIR BUSINESS PRACTICES; AND INJUNCTIVE RELIEF

1    subsequent to June 28, 2005, Clark has supervised the operations of RCDC, and has served as an

2    officer of RCDC corporation.

3         11.     Hair Club is informed and believes, and thereon alleges, that prior to June 26,

4    2005, Herrera had been employed by RCDC and/or Clark for several years as a hair restoration

5    stylist in RCDC's non-surgical hair restoration business.  Beginning on or about June 27, 2005,

6    and continuing until on or about November 22, 2006, Herrera was employed by Hair Club as a

7    hair restoration stylist in Hair Club's non-surgical hair restoration business.

8                 <u>The Purchase Agreement Between RCDC, Clark And Hair Club</u>

9         12.     On or about June 27, 2005, Hair Club, RCDC and Clark entered into an Asset

10   Purchase Agreement (the "Purchase Agreement"), pursuant to which Hair Club purchased certain

11   assets from RCDC that were used by RCDC in connection with its retail non-surgical hair

12   restoration and replacement business (the "Purchased Business"), including all of the "Purchased

13   Assets" as that term is defined in the Purchase Agreement.  A true and correct copy of the

14   Purchase Agreement (excluding the attached Schedules, which have not been included for reasons

15   of confidentiality) is attached hereto as <u>Exhibit 1</u>, and incorporated herein by reference.

16        13.     Among those assets purchased by Hair Club were various inventories, accounts

17   receivable identified in the Purchase Agreement, certain "Client Contracts" specifically identified

18   in the Purchase Agreement, certain Client "Lists" specifically identified in the Purchase

19   Agreement and certain "Lead Lists" defined in the Purchase Agreement.

20        14.     Pursuant to Section 2.1(c) of the Purchase Agreement, Hair Club was entitled to

21   and acquired:

22              All of [RCDC]'s right, title and interest in, to and under all Contracts between
23              [RCDC] and any of [RCDC]'s Clients for the provision of products and services
                relating to the Purchased Business by [RCDC] to each such Clients (the **"Client
24              Contracts"),** and all other claims, rights and causes of action of [RCDC] against
                such clients[.]
25

26        15.     Pursuant to Section 2.1(d) and (e) of the Purchase Agreement, Hair Club also

27   purchased RCDC's Client Lists and Lead Lists as follows:

28

DLA PIPER US LLP
EAST PALO ALTO

PA\10483107.2          COMPLAINT FOR BREACH OF CONTRACT; MISAPPROPRIATION OF TRADE
                       SECRETS; UNFAIR BUSINESS PRACTICES; AND INJUNCTIVE RELIEF

**Client Lists.**  All client lists (collectively, the **"Lists"**) containing the Relevant Client Information of all clients of [RCDC] (each a **"Client"** and collectively the **"Clients"**), including but not limited to:

    (i)    the List, including the Relevant Client Information . . . of all Clients who have (A) purchased from [RCDC] a hair unit during the twelve month period immediately preceding the Closing Date, (B) entered into a Client Contract with [RCDC] prior to the Closing Date obligating the Client to purchase products and services from [RCDC] for at least the twelve month period following the Closing Date . . . (C) made at least one monthly payment to [RCDC] pursuant to such Client Contract during the 31 days prior to the Closing Date, (D) had a full hair unit service from [RCDC] during the 60 days prior to the Closing Date; and

    (ii)    the List . . . of each Client who has purchased products or services from [RCDC] on an ad hoc basis at any time during the twelve month period immediately preceding the Closing Date;

**Lead Lists.**  All Lead Lists containing the names, addresses, telephone numbers and all other information in [RCDC]'s possession on the Closing Date relating to prospective clients, former clients and inactive clients of [RCDC] in respect of the Purchased Business, including without limitation lead databases and technologies and programs for generating leads[.]

16.    The Purchase Agreement also set forth certain "Conditions of Closing."  Pursuant to Section 8.1(g) of the Purchase Agreement, RCDC and Clark agreed to terminate the employment of RCDC's two "Key Employees" — defined in Section 1.1(ee) of the Purchase Agreement as referring to Herrera and one other stylist employee.  The Purchase Agreement further provided in Section 8.1(h) that as a condition of closing, the two Key Employees shall have entered into employment offer letter agreements and non-competition, non-solicitation, confidentiality or similar agreements with Hair Club, and shall have delivered copies of their valid cosmetology licenses to Hair Club.  The Closing Conditions set forth in Sections 8.1 (g) and (h) were satisfied prior to or at the time of closing under the Purchase Agreement.

17.    As a further Condition of Closing, RCDC and Clark agreed in Section 8.1(n) of the Purchase Agreement to execute a Non-Solicitation and Confidentiality Agreement in the form attached at Schedule 8.1(N) to the Purchase Agreement (the "RCDC/Clark Agreement").  A true and correct copy of the executed RCDC/Clark Agreement is attached hereto as Exhibit 2, and incorporated herein by reference.

-5-

18.     The Purchase Agreement also set forth certain "Post-Closing Covenants," including covenants regarding non-competition and confidentiality of both RCDC and Clark. Specifically, in Section 9.2(a) of the Purchase Agreement, RCDC and Clark agreed as follows:

> For a period commencing on the Closing Date [June 28, 2005] and ending two (2) years thereafter, [RCDC and Clark] (collectively referred to in this Section 9.2 as the "Covenantors") hereby agree that neither they nor any of their affiliates will, directly or indirectly, as owner, partner, joint venturer, stockholder, agent, principal, or in any other capacity whatsoever engage in, become financially interested in, be employed by, render consulting services to, or have any connection with, any business that engages in either the Purchased Business or a substantially similar type of business to the Purchased Business within a 20 mile radius of any center operated by the Purchaser, a Related Party of the Purchaser or a franchisee of the Purchaser or a franchisee of a Related Party of the Purchaser . . . .

19.     In Section 9.2(b) of the Purchase Agreement, RCDC and Clark agreed as follows:

> . . . [F]or a period of two (2) years following the Closing Date:  (i) neither they nor any of their affiliates will, directly or indirectly, solicit or endeavor to obtain as a client, or service or deal with as a client, any Person who is currently a client of the Purchased Business of [RCDC] or a prospective client, former client or inactive client of [RCDC] in respect of the Purchased Business . . . (iii) neither they nor any of their affiliates will induce or allow the inducement of any Person who is an employee, officer or agent of the Purchaser to terminate such relationship, nor offer employment to, hire, employ or engage any such Person; and (iv) neither they nor any of their affiliates will offer employment to, hire, employ or engage any Person who was an employee, officer or agent of the Purchaser within two (2) years of such Person's termination of employment or engagement by the Purchaser . . . .

20.     In Section 9.2(c) of the Purchase Agreement, RCDC and Clark acknowledged and agreed as follows:

> [RCDC and Clark] further acknowledge that they have confidential information and trade secrets concerning the operation of the Purchased Business, the use or disclosure of which could cause the Purchaser substantial loss and damages that could not be readily calculated and for which no remedy at law would be adequate. Accordingly, [RCDC and Clark] covenant and agree with the Purchaser that neither they nor any of their affiliates shall, at any time, except with the prior written consent of the Purchaser, directly or indirectly use [any secret or confidential information relating to the Purchased Business] in a manner detrimental to the interests of the Purchaser . . . The term "confidential information" includes, without limitation, information not previously disclosed to the public by [RCDC and Clark's] management with respect to [RCDC and Clark's] services, business methods, systems, procedures, manuals, confidential reports, product price lists, client lists, financial information (including the

-6-

DLA PIPER US LLP
EAST PALO ALTO

PA\10483107.2                    COMPLAINT FOR BREACH OF CONTRACT; MISAPPROPRIATION OF TRADE
SECRETS; UNFAIR BUSINESS PRACTICES; AND INJUNCTIVE RELIEF

revenues, costs or profits associated with any of [RCDC and Clark's] products or services), business plans, prospects, or opportunities.

21.     RCDC and Clark also specifically agreed in Sections 9.2(d) and (f) of the Purchase Agreement that the covenants in Section 9.2 "impose a reasonable restraint," and "are a material and substantial part of the transactions contemplated by this [Purchase] Agreement."  RCDC and Clark further specifically agreed in Section 9.2(g) of the Purchase Agreement that "[i]n the event of a breach of this Section 9.2 . . . [Hair Club] shall be entitled to seek injunctive relief, without the necessity of posting any bond, or any other legal or equitable remedies" and that "[i] n any action or proceeding brought to enforce this Section 9.2, the non-prevailing party shall pay all costs and reasonable attorneys' fees incurred by the prevailing party in connection with such action or proceeding."

22.     Pursuant to Section 3.4 of the Purchase Agreement, the parties allocated the Purchase Price for the asset purchase as set forth in Schedule 3.4, attached to the Purchase Agreement.  Pursuant to Schedule 3.4 of the Purchase Agreement, the parties allocated $274,250 of the Purchase Price to "Goodwill & Other Intangibles."  A true and correct copy of Schedule 3.4 of the Purchase Agreement is attached hereto as Exhibit 3, and incorporated herein by reference.

The RCDC/Clark Agreement Between Hair Club, RCDC and Clark

23.     On or about June 27, 2005, Hair Club, RCDC and Clark executed the RCDC/Clark Agreement.

24.     Pursuant to Sections 1 and 2 of the RCDC/Clark Agreement, RCDC and Clark reaffirmed their covenants in Section 9.2 of the Purchase Agreement regarding confidentiality, non-solicitation and non-competition.  RCDC and Clark also acknowledged, in Section 4 of the RCDC/Clark Agreement that "a violation of any of the provisions of this [RCDC/Clark] Agreement will result in immediate and irreparable damage to the [Hair Club] and [RCDC and Clark] agree that in the event of such violation the [Hair Club] shall, in addition to any other rights to relief, be entitled to equitable relief by way of temporary or permanent injunction . . . "

25.     Pursuant to Section 5 of the RCDC/Clark Agreement, "[i]n any action or

-7-

1   proceeding brought to enforce this [RCDC/Clark] Agreement, the non-prevailing party shall pay

2   all costs and reasonable attorneys' fees incurred by the prevailing party in connection with such

3   action or proceeding."

4                    The Herrera Agreement Between Herrera And Hair Club

5          26.    On or about June 23, 2005, and pursuant to Section 8.1(h) of the Purchase

6   Agreement, Hair Club offered Herrera — one of the two Key Employees of RCDC — a hair

7   restoration stylist position at Hair Club's facility (then located at the old Hair Club facility),

8   effective upon finalization of the asset purchase and the closing under the Purchase Agreement

9   (the "Offer Letter"). Herrera accepted Hair Club's offer of employment and counter signed and

10  returned the Offer Letter. A true and correct copy of the executed Offer Letter is attached hereto

11  as Exhibit 4.

12         27.    As a condition of Herrera's employment with Hair Club, Herrera was required to,

13  and did, execute a Non-Disclosure, Non-Competition, and Non-Solicitation Agreement (the

14  "Herrera Agreement"). Hair Club informed Herrera in the Offer Letter that Hair Club's

15  willingness to grant Herrera employment "is based in significant part on [Herrera's] commitment

16  to fulfill the obligations specified in the [Herrera] Agreement." Hair Club asked Herrera in the

17  Offer Letter to review the Herrera Agreement carefully, and to have her attorney review it if she

18  believed that was necessary. On or about June 23, 2005, Herrera executed the Herrera

19  Agreement. A true and correct copy of the Herrera Agreement is attached hereto as Exhibit 5,

20  and incorporated herein by reference.

21         28.    In Section 3 of the Herrera Agreement, Hererra acknowledged that :

22             The [Hair Club's] business of hair replacement is based largely on certain
               confidential information including, but not limited to, list of past, current and
23             prospective customers . . . acquired, collected and classified as the result of a
               substantial expenditure of money and time; that the trade and goodwill of the [Hair
24             Club] with its customers has been established at a substantial cost to, and great
               effort on the part of, the [Hair Club]; that irreparable damage will result to the
25             [Hair Club] if such lists . . . are obtained or used by any other person or
               Competitor of the [Hair Club], or if said goodwill is diverted from the [Hair Club];
26             and that my employment is being obtained and is based upon the trust and
               confidence reposed by the [Hair Club] in me with respect to the proper use of such
27             lists . . . solely for the [Hair Club's] benefit.

28         29.    In Section 3(a) of the Herrera Agreement, Herrera agreed as follows:

DLA PIPER US LLP
EAST PALO ALTO

In the event of termination of my employment . . . I will not for a period of two (2) years from the date of termination. . . engage in the business of hair replacement, on my own account, or become interested in such business directly or indirectly . . . within a radius of the [*sic*] (10) miles of any Hair Club center . . .

30.    In Section 3(b) of the Herrera Agreement, Herrera agreed as follows:

In the event of termination of my employment . . . I will not for a period of two (2) years from the date of termination. . . directly or indirectly solicit, circularize or aid in soliciting or circularizing (generally or specifically) any business relating to hair replacement from any customer or customers of the [Hair Club], and will not deal with, or provide hair replacement services to, any customers who have, within two (2) years prior to the cessation of my employment, dealt with the [Hair Club].

31.    In Section 3(c) of the Herrera Agreement, Herrera agreed as follows:

I will not at any time, directly or indirectly, use or disclose to any persons . . . customer lists (past, present, or prospective) . . . and requirements for present and prospective customers as well as other records, statistics or other information acquired by me in the course of employment in any capacity whatsoever, or in any manner directly or indirectly aid or be a party to any act, the effect of which will tend to divert, diminish or prejudice the goodwill or business of the [Hair Club] . . . .

32.    Herrera further acknowledged in Section 3(g) of the Herrera Agreement that, in the event of her breach of any of the covenants of the Herrera Agreement, "irreparable damages will result to the [Hair Club]," that "the [Hair Club] shall be entitled to an injunction," and that, if successful in an action for an injunction, and/or accounting and damages, she "will pay reasonable attorney's fees and court costs in connection therewith."

<u>Wrongful Conduct</u>

33.    Hair Club is informed and believes, and thereon alleges, that on or about November 22, 2006, the Wednesday before the Thanksgiving holiday Herrera removed her cosmetology license and all of her personal belongings from her styling area at the new Hair Club facility.

34.    On or about Monday, November 27, 2006, the next business day for Hair Club following the Thanksgiving holiday, Herrera faxed to Hair Club a resignation letter ("Herrera's Resignation Letter"), resigning as an employee of Hair Club and informing Hair Club that she would not be returning to work.  A true and correct copy of Herrera's Resignation Letter is

-9-

DLA PIPER US LLP
EAST PALO ALTO

PA\10483107.2        COMPLAINT FOR BREACH OF CONTRACT; MISAPPROPRIATION OF TRADE SECRETS; UNFAIR BUSINESS PRACTICES; AND INJUNCTIVE RELIEF

1 attached hereto as <u>Exhibit 6</u>.

2   35. After receiving Herrera's Resignation Letter, later in the day on November 27,

3 2006, an employee of Hair Club drove by RCDC's place of business located at 2737 Walsh

4 Avenue, Santa Clara, California ("RCDC's place of business"), and observed Herrera's car at or

5 near the business. RCDC's place of business is located within ten miles of both the old Hair Club

6 and the new Hair Club facility.

7   36. Between November 27, 2006 and December 1, 2006, and after receiving Herrera's

8 Resignation Letter, at least 22 clients of Hair Club, all of whom had been serviced by Herrera

9 while she was an employee of Hair Club, telephoned or wrote to Hair Club and canceled their

10 pending hair restoration styling appointments. The majority of these clients informed Hair Club

11 that they would not be returning to Hair Club for service in the future.

12   37. In addition, two clients, each of whom Herrera serviced while an employee of Hair

13 Club, came in to the new Hair Club facility and asked for their replacement hair pieces (called

14 switches). One of these two clients indicated that she was going to take her hair piece with her to

15 RCDC's place of business to have it applied there.

16   38. On December 2, 2006, Herrera was observed to have parked her car, a 2003 Ford

17 Explorer with California license plate number 5ACJ144, registered to Enrique and/or Silvia A.

18 Herrera, in a peculiar manner in the middle of an expansive business parking lot across the street

19 from RCDC's place of business. Hair Club is informed and believes, and thereon alleges, that

20 Herrera was inside RCDC's place of business from at least 9:55 a.m. until 3:45 p.m. that day.

21   39. Also, on December 2, 2006, at least three of Hair Club's non-surgical hair

22 replacement clients, all of whom were regularly serviced by Herrera for the last 17 months, and

23 all of whom cancelled their pending appointments with Hair Club between November 27 and

24 December 1, 2006, were observed entering RCDC's place of business. Hair Club is informed and

25 believes, and thereon alleges, that each of these clients was inside RCDC's place of business for

26 between approximately 45 and 90 minutes, which is the normal amount of time needed to style

27 their hair pieces.

28   40. Hair Club is informed and believes, and thereon alleges, that at least one of its

-10-

PA\10483107.2   COMPLAINT FOR BREACH OF CONTRACT; MISAPPROPRIATION OF TRADE
SECRETS; UNFAIR BUSINESS PRACTICES; AND INJUNCTIVE RELIEF

1  clients who was serviced by Herrera while she was employed at Hair Club, has received a

2  telephone call from Clark, during which Clark indicated that Hair Club's products are inferior and

3  during which Clark attempted to convince this client to leave Hair Club and come to RCDC's

4  place of business to have his hair piece attended to.

5     41.     Hair Club is informed and believes, and thereon alleges, that RCDC and Clark

6  induced Herrera to terminate her employment with Hair Club, offered her employment, and did

7  employ her as a hair restoration stylist in direct competition with Hair Club and in competition to

8  the Purchased Business.

9     42.     Hair Club is informed and believes, and thereon alleges, that when Herrera left her

10  employment with Hair Club, Herrera took with her confidential and proprietary information

11  belonging to Hair Club, including client lists, client contact information, lead lists, procedures and

12  techniques, and hair replacement information specific to various Hair Club clients, disclosed such

13  information to RCDC and Clark and, along with RCDC and Clark, is currently utilizing such

14  information to solicit and service Hair Club's clients in connection with non-surgical hair

15  replacement and restoration services in direct competition to the Purchased Business.

16     43.     Hair Club is informed and believes, and thereon alleges, that RCDC maintains an

17  internet web site under one or more of its fictitious operating names, as previously alleged, and

18  that its web site advertises and describes various non-surgical hair restoration and replacement

19  services and products, including the Veralex non-surgical hair treatment process.

20                      **COUNT ONE (AS TO RCDC AND CLARK)**

21                  **(Breach of Contract – The Purchase Agreement)**

22     44.     Hair Club re-alleges and incorporates by this reference paragraphs 1 through 43,

23  inclusive, of this Complaint as if fully set forth herein.

24     45.     The Purchase Agreement is a valid, enforceable contract between RCDC, Clark

25  and Hair Club.

26     46.     Hair Club has fully performed each its obligations under the Purchase Agreement,

27  or the performance of those obligations has been excused.

28     47.     Hair Club is informed and believes, and thereon alleges, that RCDC and Clark

-11-

DLA PIPER US LLP
EAST PALO ALTO

PA\10483107.2                COMPLAINT FOR BREACH OF CONTRACT; MISAPPROPRIATION OF TRADE
                             SECRETS; UNFAIR BUSINESS PRACTICES; AND INJUNCTIVE RELIEF

1    breached the Purchase Agreement, and specifically the provisions of Section 9.2(a) of the

2    Purchase Agreement by, among other things, within 2 years of the Closing Date under the

3    Purchase Agreement, directly or indirectly becoming financially interested in, employed by,

4    rendering consulting services to, or having a connection with a business that engages in the

5    Purchased Business or a substantially similar type of business to the Purchased Business within a

6    20 mile radius of the old Hair Club facility and the new Hair Club facility.

7          48.    Hair Club is further informed and believes, and thereon alleges, that RCDC and

8    Clark breached the Purchase Agreement, and specifically the provisions of Section 9.2(b) of the

9    Purchase Agreement by, among other things, within 2 years of the Closing Date under the

10   Purchase Agreement, (1) directly or indirectly soliciting or endeavoring to obtain as clients, or

11   service or deal with as clients, persons who were clients of the Purchased Business and Hair Club,

12   (2) inducing Herrera to terminate her employment relationship with Hair Club and/or offering

13   Herrera employment with RCDC or an affiliate of RCDC, and (3) hiring Herrera to perform non-

14   surgical hair replacement and/or restoration services.

15         49.    Hair Club is further informed and believes, and thereon alleges, that RCDC and

16   Clark breached the Purchase Agreement, and specifically the provisions of Section 9.2(c) of the

17   Purchase Agreement by, among other things, directly or indirectly using "confidential

18   information" (as that term is defined in Section 9.2(c) of the Purchase Agreement) relating to the

19   Purchased Business in a manner detrimental to the interests of Hair Club and Hair Club's

20   business without the consent of Hair Club.

21         50.    As a direct and proximate result of RCDC and Clark's wrongful acts, Hair Club

22   has been irreparably harmed and has suffered and continues to suffer, among other things,

23   damages in accordance with proof.

24         51.    Hair Club has no adequate remedy at law because the harm it is suffering as a

25   result of RCDC and Clark's breaches of the Purchase Agreement is difficult to quantify, such that

26   damages alone cannot fully compensate Hair Club for RCDC and Clark's misconduct.

27         52.    Unless enjoined by the Court, RCDC and Clark's continued breaches of the

28   Purchase Agreement will continue to cause Hair Club to suffer further irreparable harm by,

DLA PIPER US LLP
EAST PALO ALTO

PA\10483107.2    COMPLAINT FOR BREACH OF CONTRACT; MISAPPROPRIATION OF TRADE
SECRETS; UNFAIR BUSINESS PRACTICES; AND INJUNCTIVE RELIEF

among other things, threatening the continued financial viability of the Hair Club's business by causing additional Hair Club clients to leave Hair Club, devaluing the goodwill of the Purchased Business that Hair Club bought when it purchased the Purchased Business, and allowing RCDC and Clark to continue to improperly use and potentially disclose confidential information belonging to Hair Club, including but not limited to client lists, client contact information, procedures and techniques, and hair replacement information specific to various Hair Club clients. Injunctive relief is necessary and appropriate, and identified as one of the allowable remedies in the Purchase Agreement, to ameliorate and mitigate Hair Club's ongoing injuries.

**COUNT TWO (AS TO RCDC AND CLARK)**

**(Breach of Contract – The RCDC/Clark Agreement)**

53.    Hair Club re-alleges and incorporates by this reference paragraphs 1 through 52, inclusive, of this Complaint as if fully set forth herein.

54.    The RCDC/Clark Agreement is a valid, enforceable contract between RCDC, Clark and Hair Club.

55.    Hair Club has fully performed each of its obligations under the RCDC/Clark Agreement, or the performance of those obligations has been excused.

56.    Hair Club is informed and believes, and thereon alleges, that RCDC and Clark breached the RCDC/Clark Agreement, and specifically the provisions of Section 1 of the RCDC/Clark Agreement by, among other things, directly or indirectly using "confidential information" (as that term is defined in Section 1 of the RCDC/Clark Agreement) relating to the Purchased Business in a manner detrimental to the interests of Hair Club and Hair Club's business without the consent of Hair Club.

57.    Hair Club is informed and believes, and thereon alleges, that RCDC and Clark breached the RCDC/Clark Agreement, and specifically the provisions of Section 2(a) of the RCDC/Clark Agreement by, among other things, within 2 years of the Closing Date under the Purchase Agreement, (1) directly or indirectly soliciting or endeavoring to obtain as clients, or service or deal with as clients, persons who were clients of the Purchased Business and Hair Club, (2) inducing Herrera to terminate her employment relationship with Hair Club and/or offering

-13-

DLA PIPER US LLP
EAST PALO ALTO

PA\10483107.2              COMPLAINT FOR BREACH OF CONTRACT; MISAPPROPRIATION OF TRADE
                          SECRETS; UNFAIR BUSINESS PRACTICES; AND INJUNCTIVE RELIEF

Herrera employment with RCDC or an affiliate of RCDC, and (3) hiring Herrera to perform non-surgical hair replacement and/or restoration services.

58.    Hair Club is informed and believes, and thereon alleges, that RCDC and Clark breached the RCDC/Clark Agreement, and specifically the provisions of Section 2(b) of the RCDC/Clark Agreement by, among other things, within 2 years of the Closing Date under the Purchase Agreement, directly or indirectly becoming financially interested in, employed by, rendering consulting services to, or having a connection with a business that engages in the Purchased Business or a substantially similar type of business to the Purchased Business within a 20 mile radius of the old Hair Club facility and the new Hair Club facility.

59.    As a direct and proximate result of RCDC and Clark's wrongful acts, Hair Club has been irreparably harmed and has suffered and continues to suffer, among other things, damages in accordance with proof.

60.    Hair Club has no adequate remedy at law because the harm it is suffering as a result of RCDC and Clark's breaches of the RCDC/Clark Agreement is difficult to quantify, such that damages alone cannot fully compensate Hair Club for RCDC's and Clark's misconduct.

61.    Unless enjoined by the Court, RCDC's and Clark's continued breaches of the RCDC/Clark Agreement will continue to cause Hair Club to suffer further irreparable harm by, among other things, threatening the continued financial viability of the Hair Club's business by causing additional Hair Club clients to leave Hair Club, devaluing the goodwill of the Purchased Business that Hair Club bought when it closed its purchase of the Purchased Business, and allowing RCDC and Clark to continue to improperly use and potentially disclose confidential information belonging to Hair Club, including but not limited to client lists, client contact information, procedures and techniques, and hair replacement information specific to various Hair Club clients.  Injunctive relief is necessary and appropriate, and identified as one of the allowable remedies in the RCDC/Clark Agreement, to ameliorate and mitigate Hair Club's ongoing injuries.

/ / /

/ / /

/ / /

-14-

## COUNT THREE (AS TO RCDC, CLARK AND HERRERA)

### (Misappropriation of Trade Secrets)

62.   Hair Club re-alleges and incorporates by this reference paragraphs 1 through 61, inclusive, of this Complaint as if fully set forth herein.

63.   Hair Club's business of hair restoration and replacement is based largely on certain confidential information, including but not limited to a list of past, current and prospective customers and their contact information, lead lists, procedures and techniques, and hair replacement information specific to various Hair Club clients ("trade secret information").

64.   In connection with Herrera's employment with Hair Club, Herrera acknowledged in writing that the above-described trade secret information was confidential and that it had been acquired, collected and classified by Hair Club as a result of a substantial expenditure of money and time, and that irreparable damage would result to the Hair Club if such confidential information was disclosed or used by others or by any competitor of Hair Club. The trade secret information derives independent economic value from not being generally known to the public or others who could obtain economic value from its disclosure or use, and is subject to efforts by Hair Club that are reasonable under the circumstances to maintain its secrecy.

65.   While Herrera was employed by Hair Club, Herrera became aware of Hair Club's trade secret information pertaining to Hair Club's services, business methods, systems, procedures, client lists, customer hair replacement information, etc. These services, business methods, systems, procedures, client lists, client contact information, lead lists, and hair replacement information specific to various Hair Club clients were developed as a result of a substantial amount of time, effort, and money on the part of Hair Club in the operation of its business.

66.   Hair Club is informed and believes, and thereon alleges, that Herrera misappropriated Hair Club's trade secret information, wrongly disclosed Hair Club's trade secret information to RCDC and Clark, and that RCDC, Clark and Herrera, knowing that such information was wrongfully obtained and wrongfully disclosed, are nonetheless utilizing Hair Club's trade secret information.

-15-

67.     As a direct and proximate result of RCDC's, Clark's and Herrera's wrongful acts, including misappropriation of Hair Club's trade secret information, Hair Club has been irreparably harmed and has suffered and continues to suffer, among other things, actual damages in the nature of past and future lost profits in accordance with proof.

68.     Hair Club has no adequate remedy at law because the harm it is suffering as a result of RCDC's, Clark's and Herrera's misappropriation of Hair Club's trade secret information is difficult to quantify, such that damages alone cannot fully compensate Hair Club for RCDC's, Clark's and Herrera's misconduct.

69.     Unless enjoined by the Court, RCDC's, Clark's and Herrera's continued misappropriation and use of Hair Club's trade secret information will continue to cause Hair Club to suffer irreparable harm by, among other things, threatening the continued financial viability of the Hair Club's business by causing additional Hair Club clients to leave Hair Club, devaluing the goodwill of the Purchased Business that Hair Club bought when it closed its purchase of the Purchased Business, and allowing RCDC and Clark to continue to improperly use and potentially disclose confidential information belonging to Hair Club, including but not limited to client lists, client contact information, procedures and techniques, and hair replacement information specific to various Hair Club clients.  Injunctive relief is necessary and appropriate, and identified as one of the allowable remedies in the RCDC/Clark Agreement, to ameliorate and mitigate Hair Club's ongoing injuries.

70.     The aforementioned acts of RCDC, Clark and Herrera, and each of them, were willful, oppressive and malicious.  Hair Club is therefore entitled to punitive or exemplary damages from RCDC, Clark and Herrera, and each of them, in an amount sufficient to punish RCDC, Clark and Herrera and to deter future conduct of this type.

### COUNT FOUR (AS TO RCDC AND CLARK)

### (Unfair Competition – Cal. Bus. & Prof. Code § 17200)

71.     Hair Club re-alleges and incorporates by this reference paragraphs 1 through 70, inclusive, of this Complaint as if fully set forth herein.

/ / /

DLA Piper US LLP
East Palo Alto

72.     The conduct of RCDC and Clark, as alleged above, constitutes unlawful, unfair and/or fraudulent business acts or practices pursuant to California Business and Professions Code Section 17200.  RCDC's and Clark's conduct, as alleged above, has harmed Hair Club and has deprived Hair Club of certain business, and the continued unlawful, unfair and/or fraudulent business acts or practices, if allowed to continue, will continue to harm Hair Club and its business.

73.     Pursuant to California Business and Professions Code Section 17203, any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction.   Injunctive relief is necessary and appropriate under the circumstances, to ameliorate and mitigate Hair Club's ongoing injuries.

### COUNT FIVE (AS TO HERRERA)

### (Breach of Contract – The Herrera Agreement)

74.     Hair Club re-alleges and incorporates by this reference paragraphs 1 through 73, inclusive, of this Complaint as if fully set forth herein.

75.     The Herrera Agreement is a valid, enforceable contract between Herrera and Hair Club.

76.     Hair Club has fully performed each its obligations under the Herrera Agreement, or the performance of those obligations has been excused.

77.     Hair Club is informed and believes, and thereon alleges, that Herrera breached the Herrera Agreement, and specifically the provisions of Section 3(a) of the Herrera Agreement by, among other things, within 2 years from her resignation as an employee of Hair Club, engaging in the business of hair replacement and by becoming an employee of RCDC and/or Clark and working in the business of hair replacement within a radius of 10 miles from a Hair Club center. Since November 27, 2006, Hair Club is informed and believes and thereon alleges, that since Herrera resigned as an employee of Hair Club, Herrera has engaged in the business of hair replacement within 10 miles of a Hair Club center, specifically, at RCDC's place of business.

78.     Hair Club is informed and believes, and thereon alleges, that Herrera breached the Herrera Agreement, and specifically the provisions of Section 3(b) of the Herrera Agreement by,

-17-

1  among other things, within 2 years from her resignation as an employee of Hair Club, directly or

2  indirectly soliciting and/or aiding in soliciting business relating to hair replacement from

3  customers of Hair Club, and providing hair replacement services to customers who have, within 2

4  years prior to her resignation from Hair Club, dealt with Hair Club.  Since November 27, 2006,

5  Hair Club is informed and believes and thereon alleges, that since Herrera resigned as an

6  employee of Hair Club, Herrera has solicited business relating to hair replacement from

7  customers of Hair Club, and dealt with and provided hair replacement services to customers of

8  Hair Club who have dealt with Hair Club.

9      79.    Hair Club is informed and believes, and thereon alleges, that Herrera breached the

10 Herrera Agreement, and specifically the provisions of Section 3(c) of the Herrera Agreement by,

11 among other things, directly or indirectly using or disclosing Hair Club customer names and

12 contact information and specific hair requirements for customers of Hair Club.  Hair Club is

13 further informed and believes, and thereon alleges, that Herrera breached the Herrera Agreement,

14 and specifically the provisions of Section 3(c) of the Herrera Agreement by, among other things,

15 directly or indirectly contacting Hair Club customers with the effect of diminishing or prejudicing

16 the goodwill or business of Hair Club.

17     80.    Hair Club has no adequate remedy at law because the harm it is suffering as a

18 result of Herrera's breaches of the Herrera Agreement is difficult to quantify, such that damages

19 alone cannot fully compensate Hair Club for Herrera's misconduct.

20     81.    Unless enjoined by the Court, Herrera's continued breaches of the Herrera

21 Agreement will continue to cause Hair Club to suffer irreparable harm by, among other things,

22 causing additional Hair Club clients to leave Hair Club, devaluing the goodwill of the Purchased

23 Business that Hair Club bought when it closed its purchase of the Purchased Business, and

24 allowing Herrera and others to continue to improperly use and potentially disclose confidential

25 information belonging to Hair Club, including but not limited to customer lists and contact

26 information.  Injunctive relief is necessary and appropriate, and identified as one of the allowable

27 remedies in the Herrera Agreement, to ameliorate and mitigate Hair Club's ongoing injuries.

28 ///

82.     As a direct and proximate result of Herrera's wrongful acts, Hair Club has been irreparably harmed and has suffered and continues to suffer, among other things, damages in accordance with proof.

### COUNT SIX (AS TO HERRERA)

### (Unfair Competition – Cal. B&P Code § 17200)

83.     Hair Club re-alleges and incorporates by this reference paragraphs 1 through 82, inclusive, of this Complaint as if fully set forth herein.

84.     The conduct of Herrera, as alleged above, constitutes unlawful, unfair and/or fraudulent business practices under California Business and Professions Code Section 17200. Herrera's conduct, as alleged above, has harmed Hair Club and has deprived Hair Club of certain business, and the continued unlawful, unfair and/or fraudulent business acts or practices, if allowed to continue, will continue to harm Hair Club and its business.

85.     Pursuant to California Business and Professions Code Section 17203, any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction.  Injunctive relief is necessary and appropriate under the circumstances, to ameliorate and mitigate Hair Club's ongoing injuries.

### PRAYER FOR RELIEF

WHEREFORE, Hair Club prays for judgment against the Defendants as follows:

1.     For a temporary restraining order, preliminary and permanent injunction, enjoining RCDC and Clark, and their officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with any of them, from:

    a.     Directly or indirectly or in any other capacity whatsoever, engaging in, becoming financially interested in, employed by, rendering consulting services to, or having any connection with any business that engages in any non-surgical hair restoration and/or non-surgical hair replacement business or a substantially similar type of business within a 20 mile radius of any Hair Club center, including at RCDC's place of business located at 2737 Walsh Avenue, Santa Clara, California;

    b.     Directly or indirectly soliciting or endeavoring to obtain as a client, or servicing or dealing with any person as a client, who was a client of the Purchased Business as of June 28, 2005 or who has been a client of Hair Club or a prospective client, former client or inactive client of Hair Club in

-19-

PA\10483107.2                COMPLAINT FOR BREACH OF CONTRACT; MISAPPROPRIATION OF TRADE
                             SECRETS; UNFAIR BUSINESS PRACTICES; AND INJUNCTIVE RELIEF

connection with any non-surgical hair restoration and/or non-surgical hair replacement business until after June 28, 2007;

c.   Inducing or allowing the inducement of any person who is an employee, officer or agent of Hair Club to terminate such relationship, or offering employment to, hiring, employing or engaging any such person;

d.   Offering employment to, hiring, employing or engaging any person who was at any time an employee, officer or agent of Hair Club within 2 years of that person's termination of employment with Hair Club;

e.   Directly or indirectly using any secret or confidential information, including but not limited to information not previously disclosed to the public by RCDC's management with respect to RCDC's services, business methods, systems, procedures, manuals, confidential reports, product price lists, client lists, financial information (including the revenues, costs or profits associated with any of RCDC's products or services), business plans, prospects, or opportunities relating to the Purchased Business in a manner detrimental to the interests of the Hair Club; and

f.   Operating or maintaining an internet website where non-surgical hair restoration and/or non-surgical hair replacement services are described and/or advertised until after June 28, 2007.

2.   For a temporary restraining order, preliminary and permanent injunction, enjoining Herrera, and her agents, servants, employees and attorneys, and all those persons in active concert or participation with any of them, from:

a.   Engaging in the business of hair replacement and/or hair restoration, including but not limited to as a stylist, on her own account, or becoming interested in such business directly or indirectly within a radius of (10) miles of any Hair Club center, for a period of two (2) years from the date of termination of her employment with Hair Club i.e. until at least November 23, 2008;

b.   Directly or indirectly soliciting, or aiding in soliciting, any business relating to non-surgical hair replacement or non-surgical hair restoration from any customer or customers of Hair Club;

c.   Dealing with, or providing hair replacement services to, any customers who have, within two (2) years prior to the termination of her employment, dealt with Hair Club i.e. until at least November 23, 2008;

d.   Directly or indirectly using or disclosing to any persons customer lists (past, present, or prospective) and requirements for present and prospective Hair Club customers as well as any other records, statistics or other information acquired by her in the course of her employment at Hair Club in any capacity whatsoever; and

e.   In any manner directly or indirectly aiding or being a party to any act, the effect of which will tend to divert, diminish or prejudice the goodwill or business of Hair Club.

-20-

3.    That Defendants pay over to Hair Club all gains, profits and advantages derived by them as a result of their breaches of contract, misappropriation of trade secrets and unfair business practices;

4.    An award of punitive or exemplary damages;

5.    An award of costs and expenses, including reasonable attorneys' fees incurred by Hair Club in connection with this action, as provided for in the Purchase Agreement, the RCDC/Clark Agreement and the Herrera Agreement and pursuant to applicable law; and

6.    All other relief this Court deems just and proper.

Dated:  December __21__, 2006          **DLA PIPER US LLP**

By: _____
STEVEN G. COHEN
Attorneys for Plaintiff
HAIR CLUB FOR MEN, LLC

DLA PIPER US LLP
EAST PALO ALTO

PA\10483107.2

-21-
COMPLAINT FOR BREACH OF CONTRACT; MISAPPROPRIATION OF TRADE SECRETS; UNFAIR BUSINESS PRACTICES; AND INJUNCTIVE RELIEF

**DEMAND FOR JURY TRIAL**

    Pursuant to Federal Rule of Civil Procedure 38(b), Hair Club, LLC hereby demands a trial by jury of all issues triable in this action.

Dated: December __21__, 2006       **DLA PIPER US LLP**

                         By _____
                           STEVEN G. COHEN
                           Attorneys for Plaintiff
                           HAIR CLUB FOR MEN, LLC

DLA PIPER US LLP
EAST PALO ALTO

PA\10483107.2        COMPLAINT FOR BREACH OF CONTRACT; MISAPPROPRIATION OF TRADE
SECRETS; UNFAIR BUSINESS PRACTICES; AND INJUNCTIVE RELIEF

1

## CERTIFICATION OF INTERESTED PARTIES OR ENTITIES

2      Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3  named parties, there is no interest to report.

4  Dated:  December ___21___, 2006          **DLA PIPER US LLP**

5

6                                          By _____

7                                             STEVEN G. COHEN
                                            Attorneys for Plaintiff
                                            HAIR CLUB FOR MEN, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28